Mr. Neator, how much time would you like to reserve, if anything? May I have two minutes, Your Honor? Two minutes, certainly. Take your time. You don't need to rush up here. You may proceed.  And may it please the Court, my name is Andrew Neator, and I represent the appellant, Shane Ziska. I'd like to begin with the first issue that was addressed in the briefs, and that's the issue of the rebuttal evidence that was presented by the government. The rebuttal evidence basically covered three areas. It covered Mr. Ziska's personal use of drugs. It covered allegations of racial slurs that were used in the home. And it also covered membership and knowledge of white supremacist movement, but in the home. The question really is, under what basis would this evidence have been admitted? Was it relevant, and was it permitted under the rules of evidence? Counsel, I'd like to ask you this. As you know, this is a very unusual case in some respects. A prison guard allegedly part of a white supremacist group, and communicating and participating in a prison environment. But this was a bench trial. It wasn't a jury trial. Isn't it true that there are certain presumptions about the ability of a district judge to ferret out problems with evidence that would not be true in the case of a jury? Your Honor, I think that's true. But a district judge, even in the course of a bench trial, is still required to go through a 403 analysis, for example. And in fact, the case that I believe is set up by the government, U.S. v. Fleming, for the proposition that there should be a certain degree of deference given to a district court judge in these circumstances, even in that case, the district court judge conducted a hearing to evaluate the 403 evidence in that case. So even that case stands for the proposition that, while perhaps we should give some deference to a district court judge's ability to ignore the prejudicial effect of certain evidence, it still is required to go through the standard 403 analysis. And if that's not done, is there a harmless error element to this in terms of evaluating what the impact is? Well, Your Honor, I think that the impact of the evidence here is quite clear. If I could, if Your Honor would allow me to refer to the question that was posed just a couple of minutes ago. Your Honor asked about the uniqueness of this case in that the defendant was part of a white supremacist organization. And I think that that's one of the difficulties in this case. There was never an allegation or evidence that Mr. Zisko was part of the organization. And I want to add, I should say, based upon what's in the briefs and what the judge found. Certainly, Your Honor. I think that a lot of the evidence confuses on that particular point. The evidence and the charges are that Mr. Zisko knowingly and willfully assisted in the enterprise, in this case, the Nazi low-riders. The bulk of the government's evidence in this case had to do with, first of all, the existence of this enterprise, which, as is clear from the briefs, the appellant does not even dispute. The issue is whether the appellant knowingly and willfully engaged in conduct that assisted the Nazi low-riders in this case. And specifically the question of the rebuttal testimony, what Mr. Zisko's personal views are, what his tendencies as far as drug use at home are, are absolutely irrelevant to the question of whether he knowingly engaged in activities that furthered the enterprise in this case. And I think that one of the problems is that the government presented this testimony, at least in the briefs, as contradictions of Mr. Zisko. But if we really look at the basis for why they tried to get this evidence in, at the trial level, the government specifically said that they were trying to get this information under 404B. In fact, the quote from government counsel is, under 404B, this evidence would come in and 404B governs. And so the government's theory at trial was that this was 404B evidence. Now, whether that is still their theory or their rather evolved theory now is that it was contradiction evidence, testimony of contradiction of Mr. Zisko's testimony. Neither is a valid basis for the admission of this material. In this case, whether 404B permits this evidence, I believe perhaps hinges on whether Mr. Zisko requested that notice of that evidence be provided beforehand. Did the government provide such notice? Does the record show? Your Honor, what the record does show is that when the government began the presentation of their rebuttal testimony, Mr. Zisko's counsel did object. The government made a proffer of what that testimony would be, and defense counsel pointed out that they were not even aware of the full extent of what that testimony would be. And so the record indicates that while there might have been some notice right before the brother-in-law testified, Mr. Zisko's counsel did indicate that he was not aware, for instance, I believe there were two things that he was not aware of. One of which was whether the brother-in-law was aware that Mr. Zisko had engaged in passing kites, these messages that many correctional officers pass. Did Mr. Zisko's counsel prior to the trial ever make a request for any 404B evidence that was going to be proffered? Your Honor, I don't know that that's necessarily in the record since I was not trial counsel. I just want to know what's in the record. Is there anything in the record that suggests that? Not that I'm aware that would suggest it one way or another. And what is the rule if Mr. Zisko didn't ask for that? What's the impact of that under our case law? Well, Your Honor, I still think that the evidence would need to fall under one of the rules of evidence to be admissible, and particularly in this case where Mr. Zisko's attorney did object to the admission of this evidence, which he did. Now, under 404B, I believe that the evidence would clearly be inadmissible. To begin with, the government tries to portray this as contradicting Mr. Zisko. But again, when we look at what Mr. Zisko actually testified to, on direct examination, Mr. Zisko never testified to the issue of whether he personally uses drugs or what type of racial associations he had or what type of racial slurs he may have used in the home. Let's assume for arguendo that the Court agrees with that, just arguendo. Yes. What's the impact of that in this case? I believe the impact is that the testimony that was offered in rebuttal contradicts nothing. To begin with, it does not go to the element. No, you're getting back to why it should have been excluded. But I'm just saying, if we assume, arguendo, that it should never have been admitted, what's the impact of the fact that it was admitted? I see. Your Honor, the impact is that when the district court eventually convicted Mr. Zisko on counts one, four, and five, the judge specifically said that he found that the government witnesses were more credible on certain issues than Mr. Zisko was himself. Therefore, the issue of Mr. Zisko's credibility was certainly a factor in the judge's determination on guilt or innocence in this case. The government's rebuttal testimony, which our position is was inadmissible, was presented to the Court and is presented in the government's  And the fact that that contradicts Mr. Zisko, in other words, goes to his truthfulness or untruthfulness. And so this is the testimony that was essentially cited by the Court when it made its determination of guilt on those three counts for a finding of lack of credibility. So you would say that we ought to what with respect to counts one, four, and five if we assume, arguendo, that you're correct about this particular evidence? Yes, Your Honor, because it was specifically used by the district court for its determination of guilt or innocence because credibility was clearly a very important issue for the district court. Now, again, on the issue of whether this evidence really even contradicted Mr. Zisko, again, Mr. Zisko, when he testified, the only testimony of Mr. Zisko having to do with drugs was Mr. Zisko specifically saying that he never passed drugs to another inmate or that he never provided drugs to an inmate at Chino in Madrone Hall or any of the other halls there. And so it's not a contradiction to say that he used drugs with his brother-in-law. However, that was the evidence that the government presented, and it was presented in a way that argued that it was a contradiction and therefore went to the truthfulness of Mr. Zisko's testimony, where in fact it did not. The other issue is the government points out that there were other witnesses presented by Mr. Zisko that did address the issue of his views on the races and his associations with other races. However, the witnesses that were called by Mr. Zisko specifically talked about their personal observations. These are correctional officers that discussed their personal observations of Mr. Zisko in the workplace. And so in the workplace, they never observed Mr. Zisko engaging in activity that showed a preference for white inmates. I think you've argued this point well. I think we understand your position. I would like to ask one question. This is a quote from Wright and Graham. I'm sure you're familiar with their treatise. They say, since the judge must hear the evidence in ruling on the motion to exclude the evidence under Rule 403B, exclusion of the evidence on grounds or prejudice in a bench trial is described as a useless procedure. Would you comment on that? May I ask the court to repeat that one more time? Yeah, of course. Since the judge must hear the evidence in ruling on the motion to exclude the evidence under Rule 403, exclusion of the evidence on grounds of prejudice in a bench trial is described as a useless procedure. In other words, this judge would have heard the evidence that was to be excluded anyway. The human being, he's the one that's going to rule in the case. What difference does it make practically whether it gets excluded or not? Your Honor, it makes a difference because if the judge actually did go through a 403 analysis, he may have come to the conclusion that the prejudicial effect substantially outweighed any probative value. And so I think it is important, as Fleming points out, for a judge, even if he is the trier of facts in addition, that he go through that analysis because that's the only way he's going to be able to make a decision. And so as his ultimate conclusion might have been, this is evidence that should not be admitted. It should not be part of the record. And I think that would have affected the outcome. It certainly would have affected the record that comes before this Court. All right. Perhaps you want to move on to the next point, if you have others that you wish to raise. Yes, Your Honor. If I could go to – perhaps I'll jump to the sentencing issue. There are basically three distinct sentencing issues. The second issue that was raised by Mr. Ziska is actually an issue that's conceded by the government that there is a need for remand, and that when the Probation Department went through their guideline calculations, which was eventually adopted by the Court, and admittedly not – this error was not noted by either party – they increased the guidelines a total of 11 points for the use of a weapon and injury. As I understand it, the government does concede that, and they correctly calculated the total offense total would have been 34, not 35. Is that correct? That's correct, Your Honor. Okay. So I think that since it's stipulated, you probably want to move to something else then, unless you want us to hear that again. No, Your Honor, but I think it's important to mention that, because there's an interesting connection between that issue and the other sentencing issues, in that because of that error that's conceded by the government, we now know that the ultimate sentence should not be admitted. The ultimate sentence that Mr. Ziska received was not within the proper guidelines. And so, for instance, in this case, there is no assumption of – or presumption of reasonableness, because the ultimate sentence went beyond what the guidelines should have been. When we get to the Apprendi error, the RICO charge guidelines basically say that in order to calculate what the sentencing guidelines should be, you look at the underlying racketeering activity, which arguably would have been the RICO charge. And so, the RICO charge guidelines basically would be counts 4 and 5, the other two counts of conviction. Now, what's interesting about this case is that count 5, the deprivation of rights under color of law, does have a 10-year statutory maximum. And so, the number of the argument is that when the calculations are computed as to what the guideline calculation would be for that count 5 violation, it would not have been 33, because whenever the RICO charge guidelines were computed, it was not within the guidelines. But Mr. Ziska was only sentenced to 120 months under that Section 242 violation, was he not? That's correct, Your Honor. And I would concede that the court could have ultimately sentenced Mr. Ziska to the sentence that he eventually received. The problem that I'm identifying here is that in order to reach that, the court misapplied the sentencing guidelines, because when they tried to determine what the guidelines would have been under count 5, they misapplied the sentencing guidelines. And so, when they tried to determine what the guidelines would have been under count 5, they should not have come to the conclusion that it was a 33, because it never could have been a 33. The statutory maximum would have controlled what the guidelines would be under that count of conviction. And it was that that the court used as the basis to then determine, here's where the guidelines are, I am now going to sentence to the high end of the guidelines. So, my position would be that the court could have ultimately reached the same sentence, but because they did so through a misapplication of the sentencing guidelines, this case needs to be remanded for that point as well. And the reason I say they could have eventually reached that same sentence is because our position is that the statutory maximum for that count 5 would be the guideline calculation of 120 months. And so, when the court was then looking at the count 1 charge, they would have had a sentencing guideline of 120 months. They certainly then, the court certainly then could have increased it, but they would have had to do so under the 3553A factors, which would allow a court to increase or decrease based on the enumerated factors. And so, I just wanted to clarify that our position is that the ultimate sentence could not have been reached, but it was reached through a misapplication of the guidelines. And the last sentencing issue just had to go to the... On remand, this court should indicate that the district court misapplied the guidelines when they did their calculations. And for the count 5 conviction, the guideline would have been 120 months, not the guideline number of 33, which the district court considered as the appropriate guideline, which is what probation had recommended. And then, if it wanted to then increase beyond that, the court would need to do so under 3553A, making the appropriate findings and giving Mr. Ziska's attorney the opportunity to address those upward enhancements. The final sentencing issue has to do with the reasonableness of the sentence. And in this case, the record indicates that the court focused almost exclusively on the sentence that the district court misapplied. It focused on the sentencing guidelines, to the point where it did not even realize that there was a miscalculation of the guidelines. And again, admittedly, the parties did not either. But because Mr. Ziska did present some non-frivolous bases for why his sentence should have been reduced, such as his lack of any prior criminal history, his 20 years of community service, his care for his elderly and ill father, these are all things that the district court should have considered. These are factors that the court should have considered along with and parallel to the sentencing guidelines, and that was not done. And under RETA, US v. RETA, the district court should have made appropriate findings in that regard, particularly when the defendant does not agree with the sentencing calculations. The district court needs to make appropriate findings in order for this court to make a proper review of whether the sentence is reasonable. The final issue that was presented in the brief was the issue of sufficiency of the evidence. And just rather briefly, again, the government went to great lengths to establish that an enterprise did exist. We're now at the two-minute marker, so why don't you hold that thought and present that in rebuttal. We'll hear from Mr. Lawley and the government now. Good morning, and may it please the court, Kevin Lawley on behalf of the United States. The defendant's appeals of his convictions for RICO conspiracy, Vicar, and deprivation of rights under color of law should be denied, and his convictions should be affirmed, because the district court did not commit any error, much less reversible error, in permitting the rebuttal testimony of Vincent Kobold and Ryan Ziska. I thought the government agreed on the point of the miscalculation of 3334. Did I misunderstand? No, Your Honor, with respect to the sentencing calculation. Correct. That's correct, but what I'm asserting right now is that the conviction should be affirmed. That's correct. The government does believe that a material mistake was made with respect to the calculation of the sentence. And you agree that it should be remanded to the district court to revisit that issue? To revisit that issue, and for that purpose. Now, and as a result, the government doesn't intend to address the reasonableness issue, because the district court will have an opportunity to conduct sentencing again. However, as to the Apprendi issue, should the court want to hear argument on that, as Your Honor noted, the sentence imposed by the district court didn't violate Apprendi. As a matter of law, the sentence imposed on the Section 242 offense was 120 months, the statutory maximum sentence. It isn't an Apprendi error, perhaps, but the argument, as I understand it, is that it was a guideline application error, because the guidelines would cap the Section 242, I think it is, offense at 120 months. And my following that thought, wouldn't it have been appropriate to then look at the guideline rating of one of the other underlying counts to see what score you got for a total offense level there? The government respectfully submits that that argument is unfounded. The defense cites absolutely no case law for the proposition, doesn't cite to the guidelines, doesn't cite to the advisory committee for that proposition, and it's because it doesn't exist. Pre-Booker, you have the, it's believed that the guidelines are mandatory. Case after case, including post-Apprendi cases, say, have situations in which guidelines exceed the statutory mandatory sentence. And in such cases, let's say you have a drug case where you have a five-year mandatory, a five-year cap because you have a situation in which it's a phone count. Well, the quantity of drugs might be such that under the guidelines it would justify a 40-year sentence. Well, if there were eight phone counts, under this and under the guidelines, what you would do is you would stack. You would stack the eight phone counts to get up there. It's perfectly permissible for the guidelines to go above, to go above whatever a statutory maximum sentence is. Otherwise, the guidelines would have stated so. The advisory committee is aware of what the statutory maximum sentences are. All you have to do is open a code book to figure out what it is. They never stated that you would cap it there. They provide the guidelines, and to the extent that the law otherwise requires that the sentence not exceed that by Congress saying that that's the statutory maximum, well, then you disregard the guidelines at that point. But the guidelines are what they are, and to do a correct calculation, and that is what is required under Booker. This Court, the Court is still required to do and make an accurate guideline calculation, and that is what this district court did. The fact that it exceeded the statutory maximum sentence for the Section 242 offense does not mean that the district court's guideline calculation was in any way inaccurate. What will our remand say in your view? Well, because the government believes that that particular issue is unfounded, it doesn't believe that it needs to be addressed at all in the remand. As for purposes of the remand, it should just be remanded for resentencing given the miscalculation of the sentencing guidelines and the potential effect, and the government stresses that is the potential effect that that may have had on this sentence. Because the sentence in this court was, or in this case, was imposed by the Honorable Terry Hatter, and long before the Booker case came down, Judge Hatter was always known for, in his sentencing, saying the so-called sentencing guidelines, and he bristled under the fact that they were mandatory. He never viewed them to be mandatory then. He didn't view them to be mandatory in this case, and he made it clear, despite the contentions in the defense brief, that he had considered all the 3553A factors. He referred to the defendant as being a Jekyll and Hyde character. He talked about having read all of the letters supporting the qualities of the defendant, but noted that the conduct in this case was so heinous that it warranted the sentence that he imposed. It also should be noted that the district court in this case did not go where the government asked. The government asked for a 240-month sentence, and he thought that that would be improper. The government also asked, based on the district court's finding that he had lied, that the defendant had lied, for an enhancement for obstruction of justice, and the district court didn't impose it, not because the district court disagreed that it would be a proper application of the guidelines as applied to Mr. Ziska, but the district court didn't impose it for the future effect it might have on future defendants coming before his court, and he didn't want to have a chilling effect by imposing that sentence, but when it's on remand, the government would submit that the only thing it should be on remand for is for a recalculation of the sentencing guidelines so that they're properly calculated, and then to determine whether, based on the record, whether the court would have imposed the same sentence or a different sentence. And with respect to that, the government believes that that's all that's really at issue with respect to the sentencing. Now, with respect to the convictions, as the government stated before, the district court didn't commit error, much less reversal error, in admitting rebuttal testimony, and as for the sufficiency of the evidence, when the evidence is viewed in the light most favorable to the government, as it must be on appeal, and taking into account that the trier of fact, in this case, an experienced United States district court judge, made an explicit credibility finding in favor of the government's witnesses and against the defense witnesses, the government would respectfully submit that there could be no legitimate question that a rational trier of fact could find that the defendant possessed the requisite intent to commit the offenses of conviction, which is all that he challenges. Now, before getting to the specific arguments, the government would just briefly like to address a few points made by the defendant. The defendant claims in his reply brief and before this court that there's no evidence that the defendant was a member of this group. Well, the defendant is missing the point there. There's the Nazi Lowrider prison gang, and then there's the Nazi Lowrider RICO enterprise, as defined in the indictment. And the indictment, the racketeering enterprise that was labeled the Nazi Lowrider racketeering enterprise, just for ease of reference, was broader, greater than the gang. And as defined in the indictment, the defendant was a member of this group. And as defined in the indictment, it includes associates to include the defendant. So, yes, he was a member of the racketeering enterprise. They talk about Mr. Ziska's testimony as if he were the only person who testified. There were ten witnesses. The defense case consisted of multiple witnesses who presented testimony, and with respect to the, with respect to the rebuttal evidence, and as the government will explain shortly, the purpose or the basis for the rebuttal evidence as to the drug issue didn't come from Mr. Ziska, although that's how the defense frames it. It actually came from Corrections Officer Orion, and I'll address that momentarily. What's the government's position regarding the 403-404 evidentiary matter? Do you believe that, in effect, harmless error is what we'd be looking at since this was a bench trial, or do you believe, as your opposing counsel does, that that requires a new trial as, certainly as to counts one, four, and five? Well, Your Honor, as a preliminary matter, we would submit that harmless error would apply. But let's, I think we need to take one step back. First of all, with respect to the 403 analysis, they make much of it in their briefing. However, look in the transcript. No 403 objection is ever raised. The only objection that was ever raised was a 608 objection. 403 objection wasn't raised. It's subject to plain error review because of the fact that it wasn't raised, and under a plain error, under a plain error review because of the fact it wasn't raised, there's absolutely no way it could potentially meet that standard. The prejudice that they cite is the fact that the two rebuttal witnesses is, one is an immediate family member, and one is an extended family member. Well, family members testify all the time. Now, more often than not, they testify for the defense and against the government. In this case, it flip-flopped. But the rules of evidence apply equally. Any time you have a family member, you understand the person is going to have unique access to the defendant or to whoever they're testifying about, and as a result of that, you may give certain credence or additional credence to what they say. But at the same time, it's counterbalanced by the fact that it's a family member. You know that they have some kind of bias. In most cases, you assume that they're testifying out of love or a desire not to see harm come to someone that they care greatly about. In other cases, they may, you know, be perceived to have an ax to grind, and that was certainly the thrust of the cross-examination here. And it was actually set up, not by the government, but if you actually look to the very beginning, within the first four pages of the defense's direct examination of Mr. Smith's testimony, it was set up as a cross-examination. And Mr. Ziska himself, they asked him, what is your relationship with your family? Why did it fall apart? And it was because they were aware that there was going to be rebuttal testimony. They were aware who the rebuttal testimony was going to come from, and they were essentially setting up to explain to the court that he had had a falling out with his family. And then when his son took the stand, they went right at it, and they talked about the fact that the father had disassociated himself with the family, and they tried to exploit that bias. Well, that happens. That happens in the case. They were fully able to develop the issue, and particularly when you're before an experienced United States District Court judge who sees witnesses day in and day out, is able to understand the subtleties as to what, you know, and the body language as to whether or not someone is telling truth, the government would respectfully submit that they cannot show even the second prong of the plain error standard that the error was in any way clear or obvious. But then you have to get to the final stage of the plain error review, which is the fact that you have to show that it materially affected the judgment. And there's no evidence of that at all. If you look at the testimony of the rebuttal witnesses, they go to count one. They all go to evidence that's directly relevant to the RICO conspiracy. The two witnesses, what they do is they testify about matters relating to the RICO enterprise and the defendant's association with the RICO enterprise. And with respect to count one, the government would respectfully submit that the evidence was beyond overwhelming. And this was a situation where the government had presented witness after witness who the court found to be credible. The district court made an express credibility finding. And when you have conflicting stories between witnesses and defendants, when a credibility determination is made, this Court and the Supreme Court has said that those findings will almost never be found to be clearly erroneous. I think virtually all these points you've made well in your brief, counsel. Do you have things not covered in your brief that you'd like to bring to the attention of the court? I would like to address one or two additional issues raised by the defendant. Your Honor also mentioned the 404B issue, and I would like to address that issue as well. It's sort of an irrelevant red herring in its impermissible burden shifting. It's the defendant's obligation to raise a proper objection to the introduction of evidence. The defendant, the government doesn't have to say anything. The defendant raises the objection, the court rules. The defendant in this case raised a 608 objection. It was an incorrect objection. This was impeachment by contradiction. And so the fact that the government concededly and artfully cited Rule 404, however, in doing so, stated that it was because the defendant had opened the door, and by, through witness testimony, that had talked about the fact that he was, that he was the type of person who would never engage in drug trafficking. So we essentially stated that it was impeachment by contradiction without citing the rule correctly. But it was the defendant's obligation to cite the correct rule. And so the fact that the government may have miscited is really of no moment. And as your, your, your the court certainly is aware, this court can affirm on any, provided that the evidence was admitted on any proper basis. I would, as to the issue of notice, we do believe that this is more appropriately, although it could come in under absence of mistake, particularly with respect to the movement of, of the drugs and, and the knowledge that those are drugs, we do believe that this is more appropriately impeachment by contradiction. The government acknowledges it's not in the record, doesn't, and doesn't want to introduce issues that aren't. I would like to just go back and to point to what the proffer was. And essentially what we had was, and once again, an inartful proffer of evidence. The government counsel, who was me, happened to, in explaining what he would testify to, at the tail end said, and he would testify to an admission made regarding this case without stating what it was. And that's what set the defense counsel off. The government would submit when you actually look at the transcript and look at what's, at the subject matter and what was objected to and how the cross went, that it's clear on the record that they, that the information presented was information that was previously provided. And there was no surprise there. With respect, and, and the court, the court appreciates your Honor's position with respect to the fact that these matters are raised in the brief. I would just like to target in on the fact that for the impeachment by contradiction issue, that the testimony with Corrections Officer Orion, that he was specifically asked on direct examination, and this was a witness who was so important to the defense, they called him out of order. He was specifically asked on direct examination whether he knew the defendant's views on drugs, whether or not he would have been appointed defendant if he knew the defendant to have a lax or permissive view on drug and issues of that regard. If there are any other issues that the court has, I can address the sufficiency questions. I don't think so. Counsel, thank you very much. Actually, Your Honor, there is one last point. Sometimes it comes to you as you're closing up. They make issues about the fact that some of the statements that were made in the brief were not true. Some of the statements were made at home. It's in the indictment, and it was actually admitted by the defendant. The Nazi Lowrider Enterprise was something that extended beyond prison walls. The, your adherence to the values and to the core principles was something that you were required, you were required to engage in outside the prison walls. It stayed with you through your life. Thank you. Thank you, Counsel. Mr. Nieto, do you want to use your two minutes or, I think it was two minutes left. Thank you, Your Honor. Just to address two points that were made by Government Counsel. The first goes back to the guideline issue. Government Counsel states that the issue is meritless because now after Booker, the guidelines are no longer mandatory. And I obviously agree with that. But the court still is required to make a proper calculation of the guidelines. So even though they are only advisable at this point, if the court does base its ultimate decision on a miscalculation of the guidelines, it would require a remand. So the remand should be not just for the issue of whether there was an extra point, the 10 versus the 11, but also the issue of whether the 10-year statutory maximum would have been the controlling number for the guidelines. And the second point I wanted to make has to do with the 403 issue. The Government says that the Defense Counsel didn't make the proper objection. But Defense Counsel, right before those witnesses were offered by the government, did object. In fact, the Government Counsel at trial even acknowledged that the defense had an objection to the rebuttal testimony. And then the government proffered to the court what the basis of the testimony was going to be and under what rule it would be admissible. And so Government Counsel addressed that proffer made by the government. And a 403 analysis is required at the time, at all times, for any evidence that's ever admitted at trial, unless the court has other questions I'm prepared to submit. Thank you, Mr. Neator. Thanks to both of you for your fine argument. The case of U.S. v. Ziska is submitted and the court will take a five-minute recess.
judges: Farris, Smith, Holland